IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCESSCA R. GENOVESE, individually, and as Beneficiary of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, | ) ) ) ) ) | Docket No.  15-64 |
| | ) | **COMPLAINT** |
| | ) ) | Filed on behalf of: Plaintiff, Francessca R. |
| Plaintiff | ) ) | Genovese, individually and as Beneficiary of Trust Estate under the Will of Frank R. |
| v. | ) ) | Genovese, Sr., for benefit of Francessca Rose Genovese |
| RALPH GENOVESE, individually and as Trustee of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, TRUST HOLDINGS, INC., PARAMOUNT LISTS, INC., GREAT LAKES FULFILLMENT, INC., CPG, INC., and FRANK R. GENOVESE, JR. an individual, | ) ) ) ) ) ) ) ) ) ) ) | Counsel of record for this party:<br><br>Bryan G. Baumann, Esq.<br>PA ID No.  95046<br>Michael J. Musone, Esq.<br>PA ID No. 306682<br>Knox McLaughlin Gornall & Sennett, P.C.<br>120 West Tenth Street<br>Erie, PA 16501 |
| Defendants | ) ) ) ) ) | Telephone: (814) 459-2800<br>Facsimile: (814) 453-4530<br>Email: bbaumann@kmgslaw.com<br>          mmusone@kmgslaw.com |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCESSCA R. GENOVESE, individually, and as Beneficiary of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, <br><br> Plaintiff <br><br> v. <br><br> RALPH GENOVESE, individually and as Trustee of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, TRUST HOLDINGS, INC., PARAMOUNT LISTS, INC., GREAT LAKES FULFILLMENT, INC., CPG, INC., and FRANK R. GENOVESE, JR., an individual, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Docket No. |

## COMPLAINT

Plaintiff, Francessca R. Genovese, individually and as beneficiary of the Frank R. Genovese Trust, by and through her attorneys, Knox McLaughlin Gornall & Sennett, PC, files the following in support of her Complaint:

### INTRODUCTION

Plaintiff commenced this action as a beneficiary of a trust estate with significant cash assets that initially exceeded $1.1 million and ownership interests in two corporate entities, among other assets.  Plaintiff alleges Defendant Trustee engaged in a course of conduct that resulted in numerous breaches of fiduciary duties owed to Plaintiff.  As an individual and

beneficial owner of the closely-held Defendant corporations, Plaintiff also asserts direct

shareholder claims against those entities.  Finally, Plaintiff asserts claims against the individuals

who served as Directors of said corporations for breaches of fiduciary duties owed to Plaintiff as

a shareholder.

PARTIES, JURISDICTION AND VENUE

1.      Francessca R. Genovese ("Plaintiff") is an adult individual who resides in Miami,

Florida.  Plaintiff has lived in the State of Florida since March 2012.

2.      Frank R. Genovese, Sr., now deceased, had two natural children, Frank R.

Genovese, Jr., born July 9, 1984, and Plaintiff, born January 31, 1989.

3.      On, or about, August 8, 1994, Frank R. Genovese, Sr. executed a Last Will and

Testament.  In his Last Will and Testament, Frank R. Genovese, Sr. directed that a Trust Estate

be created for the benefit of his two children.  A copy of the Last Will and Testament (the

"Trust") is attached hereto as Exhibit A.

4.      On February 26, 1999, Frank R. Genovese, Sr. passed away and the Trust for the

benefit of Plaintiff and her brother, Frank R. Genovese, Jr., was created.

5.      The Trust designates Ralph Genovese, the natural father of Frank R.

Genovese, Sr., to serve as Trustee.

6.      Ralph Genovese ("Defendant Trustee") is, and has at all relevant times been, a

resident of Erie, Pennsylvania.

7.      In addition to certain cash assets exceeding $1.1 million, the Trust owns an interest in both Trust Holdings, Inc. and CPG, Inc.  Since its inception, the Trust should have earned several hundred thousands of dollars over the life of the trust estate.

8.      Trust Holdings, Inc. owns and operates two wholly-owned subsidiaries—Paramount Lists, Inc. and Great Lakes Fulfillment, Inc.

9.      Each of Trust Holdings, Inc., Paramount Lists, Inc., Great Lakes Lists, Inc. and CPG, Inc. are corporations organized and existing under the laws of the Commonwealth of Pennsylvania with principal places of business at 3126 Peach Street, Erie, Pennsylvania 16509.

10.     Frank R. Genovese, Jr. is an adult individual who has, at all relevant times, been a resident of Erie, Pennsylvania.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

12.     Venue is proper in this judicial district under 28 U.S.C. §1391 because a substantial portion the facts and circumstances giving rise to the instant action occurred in, and around, Erie County, Pennsylvania.

FACTUAL BACKGROUND

13.     Trust Holdings, Inc., Paramount Lists, Inc., Great Lakes Fulfillment, Inc. and CPG, Inc. are engaged in the marketing and sale of lists containing various sets of consumer data to entities and individuals for targeted research and/or marketing purposes.

3

14.     At all relevant times, Defendant Trustee has served as a Director of Trust Holdings, Inc., and the sole Director of CPG, Inc.

15.     For the past several years, Frank R. Genovese, Jr. has served as a Director of Trust Holdings, Inc.

16.     After the death of Frank R. Genovese, Sr., the Trust was funded and Defendant Trustee was appointed trustee.

### The Trustee's Obligations Under the Trust

17.     With respect to the Trustee's duties, the Trust states as follows:

> I give and devise the residue of my estate to my father, RALPH GENOVESE, of Erie, Pennsylvania, as Trustee, to be held as a Trust Estate and/or distributed in accordance with the following terms and conditions:
>
>      A.     The Trustee shall hold the principal of the Trust Estate as one fund and **shall pay all of the net income therefrom in convenient installments, but at last quarter-annually, to or for the benefit of my children.**  Such payments shall continue until the youngest child of mine then living attains the age of twenty-two (22) years.

(Exhibit A, pp. 2-3) (emphasis added).

18.     Although Plaintiff has received periodic allowances from Defendant Trustee, the amount of the disbursement was determined solely by Defendant Trustee.

19.     Plaintiff has not received any quarter-annual or other payments that represent "all of the net income" from the Trust, or the resulting Sub-Trust, described below.

20.     Upon the death of Frank R. Genovese, Sr., the Trust held 100% ownership interest in Trust Holdings, Inc. and a purported 49% interest in CPG, Inc.  Also at that time, Trust Holdings, Inc. owned and operated its two wholly-owned subsidiaries, Paramount Lists, Inc. and Great Lakes Fulfillment, Inc.

21.     Given the beneficiaries' young age, Defendant Trustee assumed total operational control of the businesses immediately after the death of Frank Genovese, Sr.

### The Trustee Commingles Trust Property

22.     At that same time, Defendant Trustee owned and operated an entity known as Genovese and Associates.

23.     On, or about, January 9, 2004, Defendant Trustee merged Genovese and Associates into Trust Holdings, Inc.

24.     As part of this merger, Defendant Trustee acting as the sole Director of Trust Holdings, Inc. and Genovese and Associates, expressly agreed that Trust Holdings, Inc. "would be subject to all of the obligations, restrictions and liabilities of [Genovese and Associates] all without further act or deed."  (*See* Plan of Merger and Actions by Written Consent confirming same, attached hereto collectively as Exhibit B, Section 7.2).

25.     With respect to Genovese and Associates common stock, the Plan of Merger provides as follows:

> 3.1     All of the outstanding Common Stock of Genovese ("Genovese Common Stock"), including treasury stock, shall be cancelled and each outstanding share of Genovese Common Stock, exclusive of treasury shares, shall be exchanged for one share of Common Stock, no par value of Trust Holdings ("Trust Holdings

5

> Common Stock"). Such shares of Trust Holdings Common Stock
> shall be delivered by Trust Holdings to the shareholder of
> Genovese on or after the Effective Date upon surrender of the
> certificate representing the shares of Genovese Common Stock
> owned by the shareholder.

(Exhibit B, Section 3.1).

26.     Thus, under the Plan of Merger, Trust Holdings, Inc. purportedly absorbed all

debt and liabilities of Genovese and Associates and issued stock to Defendant Trustee, on a one-

for-one basis.  (Exhibit B).

27.     Plaintiff was only recently made aware of the terms of this merger on, or about,

February 16, 2015.

### The Trustee Refuses to Communicate With Plaintiff

28.     As Plaintiff reached her late teens, in, or about, late 2009 and early 2010, the

relationship between Plaintiff and Defendant Trustee became quite strained.

29.     In January 2010, Plaintiff was admonished by Defendant Trustee's attorney, John

Mizner, Esq., for merely attempting to contact Defendant Trustee in the following manner:

> You have attempted to contact Mr. Genovese by e-mail which you
> are not to do.  All communication of any nature to Mr. Genovese
> has to be through me and only me.

(See January 7, 2010 email correspondence, attached hereto as Exhibit C).

### The Trustee Exerts Domineering Influence Over Plaintiff

30.     Around that same time, at the approximate age of 20, Plaintiff was involved in a

motor vehicle accident.  Plaintiff's vehicle, a modest Ford Fusion leased with Trust funds, was

rendered a total loss.

31.     Following the accident, Defendant Trustee demanded that Plaintiff endorse the insurance proceeds check over to the Trust.

32.     Plaintiff complied and requested that Defendant Trustee purchase an automobile to provide for her personal transportation.  Defendant Trustee declined.

33.     Thereafter, on repeated occasions, Defendant Trustee continued to refuse Plaintiff's request for a new vehicle, but suggested that a vehicle might be acquired after Plaintiff executed a release in favor of Defendant Trustee.

34.     Moreover, knowing Plaintiff lacked personal transportation, Trustee directed Attorney Mizner to advise Plaintiff of the following:

> *Dear Francessca*
>
> *Starting next week your check will be mailed to P.O. Box 3772 at the South Erie Station which is located at Poplar St. and 36th St. This Post Office is directly across from the Liberty Shopping Center.  Your check will be mailed Tuesday or Wednesday of each week starting next week, the week of Feb. 22nd.*
>
> *You must pick up your checks up weekly.  Any checks not cashed within a 2 week period will be stopped.  You will have your own key which can be picked up at my office. This box is paid for by the Trust and is to be used only for Trust business.*
>
> *You will still be required to appear in person from time to time, to meet with and discuss various matters and/or obtain signatures for insurance or other purposes.  When this becomes necessary I will hold your check and give it to you in person when you appear at the appointed time at my office or at another designated location. Failure to appear on time will result in forfeiting your check.  If you lose your key there is an extra charge of $25.00 or more which you will have to pay to get another key.*

> *When you go to the Post Office next week to get your check you*
> *must first go to the counter and fill out a form and give two forms*
> *of I.D.  This is necessary due to the anti-terrorism laws.  You will*
> *identify yourself by name and box number (3772).  You can use*
> *your driver's license and your insurance I.D. card.  Please call me*
> *with any questions.*
>
> *John*

(*See* February 19, 2010 email correspondence, attached hereto as Exhibit D).

35.     In early 2010, Defendant Trustee actually ceased making payments to Plaintiff.

Defendant Trustee knew Plaintiff was utilizing those payments to meet her rent obligations and

other living expenses.

36.     Plaintiff was subsequently unable to meet her rent obligations and eviction

proceedings were commenced against Plaintiff.  Plaintiff was forcibly evicted from her

apartment.  Plaintiff's personal property and numerous childhood belongings were seized as part

of the eviction process and never returned.

37.     On August 4, 2010, Plaintiff's landlord obtained judgment in the amount of

$1,323.00.   A copy of the Civil Case Inquiry reflecting said judgment is attached hereto as

Exhibit E.

### The Trust Splits into Sub-Trusts

38.     In January, 2011, Plaintiff reached the age of twenty-two (22).

39.     Upon her reaching the age of twenty-two (22), the Trust provides for a split of the

Trust between Plaintiff and Frank R. Genovese, Jr:

> B.     As and when the youngest child of mine then living
> attains the age of twenty-two (22) years, or at the death of the
> survivor of my children, whichever is the earlier event, the Trustee
> shall divide the then remaining principal of the Trust Estate into as

many equal shares as there are children of mine, if any, living at
the time for this division and/or children of mine then deceased
with issue or them then surviving.

       1.     One of such equal shares shall immediately
vest in and be distributed to the then living issue per stirpes of each
deceased child of mine, subject to the minority provisions
hereinafter set forth.

       2.     One of such equal shares shall be held IN
FURTHER SEPARATE TRUST for the use and benefit of each of
my then living children. **The Trustee shall pay to each such
child of mine, or for his or her benefit, in installments
convenient to the beneficiary, but at least quarter-annually, the
net income from his or her Trust, for and during his or her
lifetime.**

(Exhibit A, pp. 2-3) (emphasis added).

      40.     On, or about, Plaintiff's twenty-second (22nd) birthday, the Trust was split into

two Sub-Trusts, one for each beneficiary of the original Trust.

      41.     Prior to splitting the Trust into the two Sub-Trusts, Defendant Trustee insisted

that Plaintiff execute a Waiver of Account, Receipt, Release and Indemnification Agreement

("2011 Waiver").

      42.     However, Plaintiff retained counsel and expressed concern over executing the

2011 Waiver.  Plaintiff requested that a formal Accounting be filed with the Court.

      43.     In response, Defendant Trustee threatened to eliminate payments to Plaintiff

under the Trust if she did not execute the 2011 Waiver.  It was also suggested to Plaintiff that an

accounting could ultimately cost Plaintiff approximately $50,000.

44.     At this time, Plaintiff was unemployed and homeless, albeit living with friends. She was also receiving treatment from a mental health professional for post-traumatic stress disorder due to a previous abusive relationship.  As such, Plaintiff was in no position to challenge Defendant Trustee's domineering influence or otherwise pay for an attorney to maintain her insistence that a formal accounting be filed.

45.     At this same time, the Trustee was aware of Plaintiff's living arrangement and medical care needs.  Yet, Defendant Trustee insisted that Plaintiff execute the 2011 Waiver.

46.     Plaintiff ultimately executed the 2011 Waiver, under duress.  A copy of the 2011 Waiver is attached hereto as Exhibit F.

47.     In the 2011 Waiver, the Trustee represented that Plaintiff's Sub-Trust had cash assets in excess of $605,000 as well as a 50% ownership stake in Trust Holdings, Inc. and certain rental properties.  According to the 2011 Waiver, the Sub-Trust also held a 24.5% interest in CPG, Inc.  The Trustee represented that the total value of Plaintiff's Sub-Trust was $1,869,762.62.

48.     After she signed the 2011 Waiver, however, Plaintiff was advised by Defendant Trustee that she was not eligible for employment with any entity owned or controlled by Trust Holdings, Inc. or CPG, Inc.

49.     In March, 2012, having repeatedly failed to secure employment with Trust Holdings, Inc., Paramount Lists, Inc. and/or Great Lakes Fulfillment, Inc., Plaintiff relocated to Florida to pursue a career in real estate.

50. After the Trust was split into two Sub-Trusts, Frank R. Genovese, Jr. was also a beneficial owner of 50% of Trust Holdings, Inc. and CPG, Inc.

51. Frank R. Genovese, Jr., however, remained in Erie, Pennsylvania and, at all relevant times, remained employed by Trust Holdings, Inc. or one of its wholly-owned subsidiaries.

52. On, or about, July 19, 2013, shares of Trust Holdings, Inc. and CPG, Inc. were removed from his trust and issued directly to Frank R. Genovese, Jr., without restriction.

53. After Plaintiff moved to Florida, Frank R. Genovese, Jr., contacted Plaintiff and made several attempts to acquire 1% of Plaintiff's ownership interest in the businesses that operate under the Trust. Frank R. Genovese Jr.'s offers sought to acquire Plaintiff's 1% interest at far less than market value and, worse, to subordinate Plaintiff's ownership interest to a minority owner. Plaintiff declined. (*See* email correspondence, attached hereto as Exhibit G).

### The Trustee Interferes With Plaintiff's Rights Under the Trust

54. Once Plaintiff attained the age of twenty-five (25), the Trust provided for increased rights:

> Notwithstanding the foregoing provisions, and following the division of the Trust estate into equal separate Trusts, as and when each child of mine attains the age of twenty-five (25) years, or at anytime thereafter, he or she shall have the right to withdraw one-half (1/2) of the then remaining principal of his or her Trust…

(Exhibit A, p. 3).

55.     Just before Plaintiff's twenty-fifth birthday and in anticipation of Plaintiff's exercise of her right to withdraw one-half (1/2) of the remaining principal in the Trust, Defendant Trustee again asked Plaintiff to execute a Waiver of Account, Receipt, Release and Indemnification Agreement ("2014 Waiver").  A copy of the 2014 Waiver is attached hereto as Exhibit H.

56.     In the 2014 Waiver, Defendant Trustee represented to Plaintiff that "as of January 31, 2014, the fair market value of the assets of the FRANCESSCA ROSE GENOVESE Trust (the "Sub-Trust") is estimated to total $568,221 in cash and $150, 041 in real estate; there are also 250 shares in Trust Holdings, Inc. and 122.5 shares in CPG, Inc. with undetermined values." (Exhibit H).

57.     Defendant Trustee, however, falsely instructed Plaintiff that, if she intended to exercise her right to withdraw up to one-half of her Sub-Trust, she was required to execute the 2014 Waiver.

58.     Plaintiff declined to execute the 2014 Waiver and requested that Defendant Trustee formally file an accounting with the Court.  Consequently, she did not exercise her right of withdrawal from the Sub-Trust at that time.

59.     On May 27, 2014, counsel for Defendant Trustee, James Cullen, Esq., requested a meeting with Plaintiff's counsel to discuss a "significant new development that affects Francesca's Trust" in person.  (*See* May 27, 2014 email correspondence, attached hereto as Exhibit I).

60.     Counsel for Plaintiff agreed to meet with Atty. Cullen.  On June 2, 2014, counsel for Plaintiff advised Atty. Cullen that Plaintiff "will not agree to waive her right to an accounting" and suggested the meeting might be unnecessary.  Atty. Cullen responded that "[w]e should still meet tomorrow."  (See June 2, 2014 email correspondence, attached hereto as Exhibit J).

61.     On June 3, 2014 counsel for Plaintiff and Defendant Trustee met in person.  At the meeting, no "significant development" was identified.  Instead, Defendant Trustee's counsel simply repeated Defendant Trustee's request that a formal accounting not be required.  Plaintiff's counsel advised that Plaintiff would not waive that right and repeated the demand that a formal accounting be filed with the court.

62.     Thereafter, Defendant Trustee produced a draft accounting, which was not filed with the Court.

63.     After receiving the draft accounting, Plaintiff was advised that Atty. Cullen no longer represented Defendant Trustee.

64.     On July 25, 2014, Atty. Mizner contacted the undersigned and advised that he had been retained by Defendant Trustee, who again requested that Plaintiff waive her right to have a formal accounting filed with the Court citing court costs of approximately $1,000.00.

65.     Again, Plaintiff advised that she would not waive her right to a formal accounting filed with the Court.

66.     On, or about, November 5, 2014, Atty. Mizner requested a meeting in person with the undersigned and Defendant Trustee on November 12, 2014.

13

67.     On November 11, 2014, counsel for Plaintiff again advised as follows:

> I wanted to let you know that my client insists on an accounting
> (current through September 2014, since we've passed through
> another quarter) be filed with the Court.  She will not waive any
> rights against Mr. Genovese.  This is the third time she has advised
> Mr. Genovese of that same position since June (once through Atty.
> Cullen), and yet no accounting has been filed to date.
>
> This disregard for Trustee duties only fuels my client's significant
> concerns regarding Mr. Genovese's administration of the Trust.
>
> She has instructed me to request an Order from the Court directing
> Mr. Genovese to file a <u>current</u> accounting.  I am advised this will
> be her position regardless of what might be said during a meeting
> tomorrow.
>
> If you still want to meet, that's fine.  I'm happy to sit down with
> you and Mr. Genovese.  I just want to ensure you understood her
> position remains unchanged and to avoid (possibly) wasting Mr.
> Genovese's time unnecessarily.

(*See* November 11, 2014 email correspondence attached hereto as Exhibit K).

68.     The November 12, 2014 meeting went forward.  During that meeting, Defendant Trustee repeated his request that Plaintiff withdraw her request to file an accounting with the Court.

69.     Also at the meeting, Defendant Trustee tendered a revised accounting ("Revised Accounting"), along with statements from seven (7) accounts with five (5) different banking institutions that purportedly support the Revised Accounting.  The Revised Accounting recites a purported increased Sub-Trust valuation of approximately $1 million.

70.     Plaintiff maintained that she would not execute a Waiver in favor of the Trustee, nor agree to condition her right to withdraw up to 50% of her Sub-Trust principal upon same. She repeated her insistence that an Accounting formally be filed with the Court.

14

71.     On January 7, 2015, Defendant Trustee relented and filed a First and Partial Accounting with the Court of Common Pleas of Erie County Orphans Court Division (the "2015 Accounting").  A copy of the 2015 Accounting is attached hereto as Exhibit L.

72.     After Defendant Trustee filed the 2015 Accounting, Plaintiff advised Defendant Trustee that she elected to withdraw $250,000 in cash and 50% of the stock holdings in her Sub-Trust, which represents less than 50% of the principal.  Plaintiff had not previously communicated such an election because any election was expressly conditioned upon her execution of a Waiver in favor of the Trustee.

73.     On January 26, 2015, Defendant Trustee filed a Petition for Adjudication/ Statement of Distribution ("Petition for Adjudication") with the Court of Common Pleas of Erie County Orphans Court Division.

74.     In the Petition for Adjudication, and specifically in response to Plaintiff's exercise of her election right, Defendant Trustee has requested that the Court of Common Pleas of Erie County Orphans Division issue an Order providing, *inter alia*, that the distribution of shares directly to Plaintiff be accompanied by the imposition of onerous restrictions upon their transferability and alienability.

75.     In support of this position, Defendant Trustee relies upon his concerns for Frank R. Genovese, Jr., as a "contingent beneficiary" of Plaintiff's Sub-Trust.  No such concerns, however, were expressed on behalf of Plaintiff when Frank R. Genovese, Jr. previously requested and, in fact, received shares from his Sub-Trust.

76.     Such restrictions are not in Plaintiff's best interests, nor are they supported by any language in the Trust.[1]

77.     On February 19, 2015 Plaintiff filed Statement of Objections to First and Partial Account for the Frank R. Genovese Trust FBO Francessca Genovese to the 2015 Accounting. Plaintiff's Objections remain pending.

78.     The 2015 Accounting evidences regular payments made by Defendant Trustee to Plaintiff, as well as several significant discretionary disbursements from principal.  Despite the irregularity and varying magnitude of the discretionary disbursements over a four-year span, the 2015 Accounting purports to depict a fully-reconciled Account, with nearly 100% of disbursements coming from purported "income."

79.     Plaintiff alleges Defendant Trustee only disbursed funds to the Sub-Trust as he saw fit in his sole discretion, and not pursuant to the terms of the Trust.  This course of conduct resulted in a significant, and unaccounted for, amount of undisbursed income that should have been payable to the Trust and/or Sub-Trust for the benefit of Plaintiff.

80.     At all relevant times, the Defendant corporations have maintained excessive liquidity, which Plaintiff alleges constitutes "income" properly payable to the Trust and Sub-Trust and, ultimately, Plaintiff on an at least quarterly basis under the terms of the Trust.

---

[1] As set forth below, recently received corporate minutes actually confirm that the shares have already been issued to Plaintiff directly, without restriction.  While the issue of the restrictions appears moot, Defendant Trustee's conduct in pursuing such restrictions, whether after the fact, or otherwise, and their treatment of Plaintiff after the issuance remain very much in dispute.

81.     Plaintiff believes and alleges Defendant Trustee has administered the Trust and Sub-Trust in such a way that he has repeatedly breached various fiduciary duties owed to Plaintiff.

82.     Plaintiff believes and alleges that Defendant Trustee has engaged in self-dealing and the commingling of Trust and Sub-Trust income with corporate income of Trust Holdings, Inc. and/or CPG, Inc. and/or other accounts owned and/or controlled by Defendant Trustee.

83.     Despite having over $1 million in liquid assets at the time the Trust was created following the death of Frank R. Genovese, Sr. on February 26, 1999, Defendant Trustee has failed to implement any investment strategy for the cash assets of the Trust or Plaintiff's Sub-Trust throughout the entire life of the trust estate.

84.     Defendant Trustee's failure to implement any investment strategy with respect to the cash assets in the Trust and Sub-Trust proximately caused Plaintiff to suffer significant, as–yet uncalculated, monetary damages.

### *The Defendants Oppress and/or Defraud Plaintiff*

85.     Despite a request for, *inter alia*, copies of all corporate minutes, Plaintiff has only received piecemeal production of corporate minutes.  Corporate documents—received after Defendant Trustee filed his Petition for Adjudication—actually confirm that the shares requested were issued to Plaintiff, in her individual capacity, without restriction and without notice to her on February 19, 2014.  (*See* Action by Consent in Lieu of a Special Meeting dated February 19, 2014, attached hereto as Exhibit M).

86.     Thus, the issuance of stock directly to Plaintiff has already occurred, despite Defendant Trustee's insistence that the Court of Common Pleas of Erie County somehow condition their issuance to Plaintiff upon an affirmative restriction against the right to transfer and/or alienate said shares.

87.     Moreover, despite having already issued shares directly to her, Defendant Trustee, Defendant Frank R. Genovese, Jr. and each of the corporate defendants continued to treat Plaintiff as a mere beneficial owner of stock through her Sub-Trust, and not an individual owner of the corporations.

88.     On February 6, 2015, the Defendants held corporate meetings without notice to Plaintiff, despite the fact that she was a 25% shareholder of record prior to the applicable record date.  At that meeting, Defendant Trustee and Frank R. Genovese, Jr. purported to "unanimously" elect themselves to another term as Directors of Trust Holdings, Inc.  Defendant Trustee also purported to waive notice of this February 6, 2015 meeting on behalf of Plaintiff, but did not provide Plaintiff actual notice of said meeting—or her waiver relating to same—at any time.  (*See* February 6, 2015 Meeting Minutes and Waiver, attached hereto as Exhibit N).

89.     This is consistent with the corporation's treatment of Plaintiff, through the sole direction of Defendant Trustee early on and subsequently with the assistance of Defendant Frank R. Genovese, Jr.

90.     In addition to Defendant Trustee's merger of Genovese and Associates into the Trust property, Defendant Trustee and/or Defendant Frank R. Genovese, Jr. have, upon information and belief, directed the Defendant corporations to over compensate each of them both directly in the form of salary and bonuses and indirectly through management fees or other compensation schemes.

91.     From 2011 through 2013[2] alone, Trust Holdings, Inc. paid out at least $1,157,862 in "management fees."

92.     Plaintiff also believes and alleges Defendant Trustee and Frank R. Genovese, Jr. have utilized the Defendant corporations to engage in wasteful and excessive spending for their personal benefit and not that of the Defendant corporations.

93.     Upon information and belief, Plaintiff alleges Defendant Trustee and/or Frank R. Genovese, Jr. have engaged in self-dealing that resulted in income properly payable to Trust Holdings, Inc. subsidiaries and/or CPG, Inc. being diverted away to other entities and/or individuals.

---

[2] Plaintiff requested tax returns for years predating 2011, but Defendant Trustee declined, citing release language in the 2011 Waiver.

94.     To date, Plaintiff has discovered at least three entities that have an apparent

relation[3] with Trust Holdings, Inc.: Paramount Direct Marketing, Inc.,[4] Paramount Lists, LLC

and Great Lakes Management, LLC.[5]  There is no record in the 2015 Accounting, or elsewhere

in documents received from Defendant Trustee to date regarding these entities.

95.     These entities, with the same business address as entities owned by Plaintiff, both

individually and beneficially, are potential repositories where income derived through the

business of Trust Holdings, Inc. (and its subsidiaries) and/or CPG, Inc. may be deposited without

notice to, and to the extreme detriment of, Plaintiff.

### *Dissent Out of Concern for Plaintiff is Stifled*

96.     Until approximately February, 2014, Defendant Trustee employed his daughter,

Kristin Genovese Kowalewski, and son-in-law, Brian Kowalewski as officers of the Defendant

corporations.

97.     At times, Kristin Genovese Kowalewski served as President of Paramount

Lists, Inc. and a Director of Trust Holdings, Inc.

98.     Upon information and belief, and in anticipation of the vesting of Plaintiff's right

to withdraw up to 50% of the Trust principal upon her attaining her twenty-fifth (25th) birthday,

Defendant Trustee devised a plan to prevent Plaintiff from becoming a Director of Trust

Holdings, Inc.  To that end, Defendant Trustee proposed an amendment to the Bylaws of Trust

---

[3] These entities each utilize the same address utilized by Trust Holdings, Inc., 3126 Peach Street, Erie, Pennsylvania
and/or identify an overlap in officers and management with Trust Holdings. Inc. and CPG, Inc.

[4] There is no record of this entity on file with the Pennsylvania Department of State.

[5] No K-1 Statements or other notation evidencing any Trust ownership interest of these LLCs was included in the
income tax returns provided to Plaintiff.

Holdings, Inc. that set forth new, and more onerous, criteria for eligibility to serve as a Director of Trust Holdings, Inc.

99.     The newly proposed criteria, approved in May, 2013, required either a 4-year degree from a U.S. accredited university or similar amount of experience in Trust Holdings Inc.'s industry.  Defendant Trustee, however, knew Plaintiff did not attend college and, further, that she lacked such industry experience because Defendant Trustee refused to employ Plaintiff at any of the Defendant corporations.

100.    This amendment to the Bylaws of Trust Holdings, Inc. required approval of a majority of all shareholders or a majority of the Board of Directors.  The Amendment was signed by Defendant Trustee and Frank R. Genovese, Jr. only.

101.    Kristin Genovese Kowalewski, Defendant Trustee's daughter and Plaintiff's aunt did not sign the Amendment to the Bylaws.

102.    Upon information and belief, Kristin Genovese Kowalewski and Brian Kowalewski opposed the Amendment to the Bylaws.

103.    After the amendment passed, Ms. Kowalewski and her husband were terminated. Mr. and Ms. Kowalewski subsequently initiated litigation against the Defendants, which has since been resolved.  The substance of their claims remains unknown, as only a Writ of Summons was filed on their behalf.

104.    Significantly, they remain bound by a non-disclosure agreement executed in connection with the resolution of that litigation.

105.     It is believed that each of Kristin Genovese Kowalewski and Brian Kowalewski possess knowledge and information that further substantiates Plaintiff's claims.

**_Plaintiff's Direct Harm_**

106.     Trust Holdings, Inc. is a closely held corporation, with two wholly-owned subsidiaries, having only two owners: Plaintiff and Frank R. Genovese, Jr.

107.     At all relevant times, the Defendant corporations have maintained excessive liquidity, while paying meager dividends or distributions to shareholders, if any.

108.     At all relevant times, and with the sole exception of Plaintiff, there is substantial and, at times, complete overlap between the non-Plaintiff shareholders and management of the Defendant corporations.

109.     As one of only two owners of Trust Holdings, Inc. and its subsidiaries, Plaintiff's claims will not unfairly expose the Defendants to a multiplicity of actions.

110.     Plaintiff's claims will not materially prejudice the interests of any corporate creditors.

111.     Nor will Plaintiff's claims interfere with a fair distribution of the recovery, if any, among all interested parties.

112.     Based on the foregoing, the Defendants have collectively and deliberately acted to directly harm Plaintiff and/or otherwise interfere with Plaintiff's rightful incidents of ownership in one or more of the following respects:

        (a)     By interfering with Plaintiff's right to vote;

22

(b)   By failing to provide Plaintiff with notice of meetings;

(c)   By failing to issue stock certificates or otherwise notify Plaintiff that shares were directly issued to her;

(d)   By improperly waiving Plaintiff's notice of meetings;

(e)   By improperly voting Plaintiff's shares;

(f)   By improperly withholding the payment of dividends or distributions;

(g)   By improperly engaging in *ultra vires* or other unauthorized actions;

(h)   By acting to oppress and/or defraud Plaintiff by treating her as a minority or non-shareholder despite her true ownership status;

(i)   By engaging in conduct intended to restrict basic rights inherent to Plaintiff's shares, including, but not limited to, transferability and alienability; and

(j)   By engaging in conduct in either personal or corporate capacities that depressed the value of Plaintiff's shares.

113.   Given Frank R. Genovese, Jr.'s prominent role in the business of Trust Holdings, Inc., and its subsidiaries, as well as the allegations set forth herein, Plaintiff's injuries are separate and distinct from those of the only other real party in interest/shareholder of Trust Holdings, Inc.

114.   Likewise, given Ralph Genovese's role as sole director of CPG, Inc., Plaintiff's injuries are separate and distinct from those suffered only other two shareholders of CPG, Inc.

## COUNT ONE
## BREACH OF FIDUCIARY DUTY

***Ralph Genovese, Individually and as Trustee of the Frank R. Genovese, Sr. Trust and Sub-Trust f/b/o Francessca R. Genovese***

115.     Plaintiff repeats and restates each and every allegation set forth in Paragraphs 1 through 114 as though fully set forth herein.

116.     Based on the foregoing, Defendant Trustee has breached various fiduciary duties owed to Plaintiff, including but not limited to one or more of the following:

(a)     By failing to administer the Trust and Sub-Trust in good faith in accordance to its provisions and purposes in the best interests of the beneficiaries and in accordance with applicable law. *See* 20 Pa.C.S. §7771;

(b)     By failing to administer the Trust and Sub-Trust in a manner consistent with his duty of loyalty to Plaintiff. *See* 20 Pa.C.S. §7772;

(c)     By failing to administer the Trust in manner consistent with his duty of impartiality to Plaintiff. *See* 20 Pa.C.S. §7773;

(d)     By failing to administer the Trust and Sub-Trust as a prudent person would, by considering the purposes, provisions, distributional requirements and other circumstances of the Trust and by exercising reasonable care, skill and caution. *See* 20 Pa.C.S. §7774;

(e)     By failing to administer the Trust and Sub-Trust in such a manner as to not to incur unreasonable costs or expenses. *See* 20 Pa.C.S.A §7775;

(f)     By failing to utilize special skills or expertise necessary to administer the Trust and Sub-Trust, including but not limited to, the ineffective and improper operation of the businesses owned by the Trust and Sub-Trust. *See* 20 Pa.C.S.A. §7776;

(g)     By failing to take reasonable steps to take control of and protect Trust and Sub-Trust property. *See* 20 Pa.C.S.A. §7779;

24

(h)     By failing to respond to Plaintiff's reasonable requests for information regarding the administration of the Trust and Sub-Trust. *See* 20 Pa.C.S.A §7780.3; and

(i)     By failing to exercise discretionary powers in good faith and in the best interests of Plaintiff in accordance with the provisions and purposes of the Trust and Sub-Trust.  20 Pa.C.S.A. §7780.4.

117.    In addition, Plaintiff avers Defendant Trustee has operated the businesses owned by the Trust and Sub-Trust in a manner that is inconsistent with Plaintiff's best interests.

118.    Plaintiff believes and avers Defendant Trustee has improperly commingled Trust and Sub-Trust income with corporate income of Trust Holdings, Inc. and/or CPG, Inc. or otherwise commingled said funds with accounts under his control and/or ownership.

119.    Plaintiff believes and avers Defendant Trustee has received excessive compensation and/or benefits that should have been payable to Plaintiff as a beneficiary of the Trust and Sub-Trust.

120.    Based upon the foregoing, Defendant Trustee has committed a serious breach of trust and otherwise failed to effectively administer the Trust and Sub-Trust due to his own unwillingness and/or persistent failures to do that which is required of him by the Trust. *See* 20 Pa.C.S. §7766.

121.    As a direct and proximate result of Defendant Trustee's conduct, Plaintiff has sustained, and will continue to sustain, significant as yet uncalculated monetary and other damages.

122. Therefore, Plaintiff seeks relief from this Court providing for one or more of the following:

(a) Compelling Defendant Trustee to perform his duties, including but not limited to, payment of all income into the Sub-Trust and, minimally, to Plaintiff on at least a quarterly basis;

(b) Enjoining Defendant Trustee from committing a breach of trust;

(c) Removal of Defendant Trustee;

(d) Reduction or denial of all compensation to be paid to Defendant Trustee and disgorgement of all such compensation paid to date;

(e) Voiding any and all acts undertaken by the Trustee that are not consistent with Plaintiff's best interests;

(f) Imposing a lien or constructive trust upon any and all amounts of monies improperly paid to Trustee through administration of the Trust or Sub-Trust or otherwise through operation of the businesses owned by the Trust and Sub-Trust;

(g) A surcharge for any and all damages Plaintiff sustained by Defendant Trustee's breach of duties; and

(h) An award of attorneys' fees and costs.

WHEREFORE, Francessca Genovese, individually and as Beneficiary of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, respectfully requests that this Court enter judgment in her favor and against Ralph Genovese, individually and as Trustee of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, Trust Holdings, Inc., Paramount Lists, Inc., Great Lakes Fulfillment, Inc., CPG, Inc. and Frank R. Genovese, Jr., and for an award of damages and other relief as set forth above, together with attorneys' fees, costs and interest as well as such additional relief to Plaintiff as authorized by law and as this Court deems just.

26

## COUNT TWO
## DECLARATORY JUDGMENT

***Ralph Genovese, Individually and as Trustee of the Frank R. Genovese, Sr. Trust and Sub-Trust f/b/o Francessca R. Genovese***

123.    Plaintiff repeats and restates each and every allegation set forth in Paragraphs 1 through 122 as though fully set forth herein.

124.    Plaintiff alleges that she executed the 2011 Waiver under duress and, for that and other equitable considerations, contends the 2011 Waiver should not be enforceable against Plaintiff.

125.    Plaintiff otherwise alleges the 2011 Waiver was induced by improper conduct of Defendant Trustee and is therefore the product of fraud and/or self-dealing. *See* 20 Pa.C.S. §7789.

126.    Plaintiff requested records from Defendant Trustee that predated the 2011 Waiver.  Defendant Trustee refused to tender any such documents to Plaintiff, citing the 2011 Waiver.

127.    In the 2015 Accounting, however, Defendant Trustee seeks to modify terms set forth in the 2011 Waiver.  Under "Adjustments to Inventory," Defendant Trustee reports a reduction in value of $292,499.50, based on errors made prior to the Trust split and Plaintiff's execution of the 2011 Waiver.

128.    Therefore, a real and genuine dispute exists as to whether the 2011 Waiver is enforceable against Plaintiff, such that intervention of this Court is necessary.

129.    Therefore, Plaintiff hereby requests that this Court declare that the 2011 Waiver be declared null and void and unenforceable against Plaintiff for any purpose.

WHEREFORE, Francessca Genovese, individually and as Beneficiary of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, respectfully requests that this Court enter judgment in her favor and against Ralph Genovese, individually and as Trustee of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, Trust Holdings, Inc., Paramount Lists, Inc., Great Lakes Fulfillment, Inc., CPG, Inc. and Frank R. Genovese, Jr., and for an award of damages and other relief as set forth above, together with attorneys' fees, costs and interest as well as such additional relief to Plaintiff as authorized by law and as this Court deems just.

## COUNT THREE
## DIRECT SHAREHOLDER ACTION

*Trust Holdings, Inc., Paramount Lists, Inc., Great Lakes Fulfillment, Inc. and CPG, Inc.*

130.    Plaintiff repeats and restates each and every allegation set forth in Paragraphs 1 through 129 as though fully set forth herein.

131.    The foregoing allegations constitute a direct, peculiar and special harm to Plaintiff.

132.    Based on the foregoing, Plaintiff prays this Honorable Court enter an Order providing for equitable relief as follows:

(a)    Enjoining any effort to interfere with Plaintiff's right to vote;

(b)    Enjoining all improper voting of Plaintiff's shares;

28

      (c)     Compelling the payment of all dividends or other distributions this Court deems appropriate;

      (d)     Unwinding of any and all *ultra vires* or other unauthorized actions;

      (e)     Enjoining all *ultra vires* or other unauthorized actions; and

      (f)     Enjoining all restrictions against Plaintiff's basic rights inherent in ownership of her shares, including but not limited to, any restraint on transferability or alienation.

133.    In addition to the foregoing equitable relief, Plaintiff also prays for an appropriate award of monetary damages proximately caused by one or more of the following:

      (a)     Maintaining excessive liquidity;

      (b)     Failure to pay dividends and/or distributions as appropriate;

      (c)     Excessive compensation to officers and employees;

      (d)     Excessive wasteful spending that would have resulted in liquid funds payable as dividends or other distribution to shareholders; and

      (e)     An award of attorneys' fees and costs from any fund resulting from Plaintiff's claims herein.

WHEREFORE, Francessca Genovese, individually and as Beneficiary of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, respectfully requests that this Court enter judgment in her favor and against Ralph Genovese, individually and as Trustee of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, Trust Holdings, Inc., Paramount Lists, Inc., Great Lakes Fulfillment, Inc., CPG, Inc. and Frank R. Genovese, Jr., and for an award of damages and other relief as set forth above, together with attorneys' fees, costs and interest as well as such additional relief to Plaintiff as authorized by law and as this Court deems just.

## COUNT FOUR
## BREACH OF FIDUCIARY DUTY

### *Ralph Genovese and Frank R. Genovese, Jr.*

134.    Plaintiff repeats and restates each and every allegation set forth in Paragraphs 1 through 133 as though fully set forth herein.

135.    That, as Directors, each of the Defendant Ralph Genovese and Frank R. Genovese, Jr. owed Plaintiff certain fiduciary duties to Plaintiff, which each of said Defendants have materially breached in one or more of the following respects:

   (a)    By engaging in conduct that oppressed and/or defrauded Plaintiff;

   (b)    By engaging in conduct that deprived Plaintiff of rights inherent in the ownership of her shares;

   (c)    By engaging in conduct deliberately intended to harm Plaintiff's ownership interest;

   (d)    By engaging in self-dealing;

   (e)    By failing to approve an appropriate dividend and/or other distribution;

   (f)    By engaging in a scheme to prevent Plaintiff from serving as a Director of the Defendant corporations;

   (g)    By engaging in a scheme to induce Plaintiff to sell part of her shares and become a minority shareholder by offering to purchase part of her ownership at substantially less than fair market value;

   (h)    By restricting former officers and employees from discussing any aspect of their employment at the Defendant corporations with Plaintiff;

   (i)    By approving excessive compensation for themselves;

   (j)    By engaging in extensive waste of corporate assets for their personal benefit and not that of Plaintiff;

   (k)    By engaging in conduct in their individual or corporate capacities that depressed the value of Plaintiff's shares;

(l)     By diverting or commingling corporate funds with entities in which Plaintiff has no ownership to avoid paying additional income to Plaintiff; and

(m)    By failing to otherwise act in the best interests of the Defendant corporations and their shareholders.

WHEREFORE, Francesca Genovese, individually and as Beneficiary of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, respectfully requests that this Court enter judgment in her favor and against Ralph Genovese, individually and as Trustee of Trust Estate under the Will of Frank R. Genovese, Sr., for benefit of Francessca Rose Genovese, Trust Holdings, Inc., Paramount Lists, Inc., Great Lakes Fulfillment, Inc., CPG, Inc. and Frank R. Genovese, Jr., and for an award of damages and other relief as set forth above, together with attorneys' fees, costs and interest as well as such additional relief to Plaintiff as authorized by law and as this Court deems just.

Respectfully submitted,

KNOX McLAUGHLIN GORNALL & SENNETT, P.C.


BY:  /s/Bryan G. Baumann
         Bryan G. Baumann, Esq.
         Michael J. Musone, Esq.
         120 West Tenth Street
         Erie, Pennsylvania 16501
         (814) 459-2800

         Attorneys for Plaintiff,
         Francessca R. Genovese, individually and as
         Beneficiary of Trust Estate under the Will of
         Frank R. Genovese, Sr., for benefit of
         Francessca Rose Genovese

# 1564089.v1

31